**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | Case No. 24-cv-8664 |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| ASML HOLDING N.V., CHRISTOPHE FOUQUET, ROGER DASSEN, and PETER WENNINK, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff City of Hollywood Firefighters' Pension Fund ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based upon the investigation of Plaintiff's counsel, which included, among other things, review and analysis of: (1) regulatory filings made by ASML Holding N.V. ("ASML" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (2) wire and press releases published by the Company; (3) analyst and media reports concerning ASML; and (4) other publicly available information regarding Defendants (defined below). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This securities class action is brought on behalf of a class of all investors that purchased or otherwise acquired ASML ordinary shares on the Nasdaq Stock Market (the "Nasdaq") between January 24, 2024, and October 15, 2024, inclusive (the "Class Period"). The

1

claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, promulgated thereunder.

2.     ASML is a Dutch corporation with its principal executive offices in Veldhoven, The Netherlands.   ASML is a leading supplier to the semiconductor industry, providing chipmakers with hardware, software, and services to mass produce integrated circuits (i.e., microchips).  In particular, ASML sells photolithography machines to chipmakers that are used in the semiconductor fabrication process.  ASML's ordinary shares are listed on both the Nasdaq and the Euronext Amsterdam stock markets under the ticker symbol "ASML."  All references herein to prices of ASML ordinary shares are to prices on the Nasdaq.

3.     In November 2022, ASML provided long-term guidance, telling investors that by 2025 the Company would generate between €30 billion and €40 billion in sales, with a gross margin of between 54% and 56%.

4.     In March 2023, the Dutch government announced plans to implement new export controls on certain semiconductor technology.  These restrictions would limit the number and types of machines that ASML could ship to customers in China, one of the Company's key markets for growth.  At the time, ASML claimed that it did "not expect these measures to have a material effect on our financial outlook . . . for 2023 or for our longer-term scenarios."  At the end of June 2023, the Dutch government published its new regulations, which ultimately went into effect in September 2023.  In the wake of the announcement of the new regulations, ASML benefitted from strong demand from customers in China as chipmakers rushed to order ASML's photolithography machines before the looming export restrictions.

5.     In 2023, the global semiconductor industry experienced a significant downturn, with *Forbes* explaining that "[t]he 2023 slowdown . . . was the result of a confluence of factors that

include[d] rising inflation, geopolitical unrest, and the lasting effects of the global pandemic." The rise in demand from customers in China beginning in the second half of 2023 after the announcement of tighter export controls helped offset the effects on ASML from a slowdown in the semiconductor industry.

6.    On January 1, 2024, ASML reported that the Dutch government had "partially revoked" licenses that allowed the Company to ship certain machines to China in 2023 and, as a result, ASML cancelled those shipments. ASML claimed that the revocation of those licenses affected only a "small number of customers."

7.    The Class Period begins on January 24, 2024, which coincides with the Company's announcement of its fourth quarter and full-year 2023 results, including 2023 net sales of €27.6 billion (representing an approximately 30% year-over-year increase). Defendant Peter Wennink, the Company's President and Chief Executive Officer at that time, explained that while the "semiconductor industry continues to work through the bottom of the cycle," "there are some positive signs" as "[i]ndustry endmarket inventory levels continue to improve and litho tool utilization levels are beginning to show improvement." Moreover, Defendant Wennink touted that the Company's "strong order intake in the fourth quarter clearly supports future demand," and stated that "[w]e . . . expect 2024 to be an important year to prepare for significant growth that we expect for 2025."

8.    During the accompanying investor earnings call that same day, an analyst asked Defendant Wennink whether ASML was "still targeting the middle of the range" for the Company's 2025 net sales guidance of between €30 billion and €40 billion (which ASML first announced on November 10, 2022, in connection with the Company's November 11, 2022,

Investor Day).  In response, Defendant Wennink explained that he "thought the low end of the range was too conservative."

9.      Throughout the Class Period, Defendants repeatedly assured investors that, despite broader adverse trends in the semiconductor industry, ASML's business was on a path to recovery. Defendants also downplayed concerns about the impact that tighter export regulations would have on ASML's revenue from systems sold to customers in China.

10.     The truth about ASML's prospects was revealed in connection with the Company's release of its third quarter 2024 financial results on October 15, 2024, and the accompanying earnings call on October 16, 2024.  On October 15, 2024, the Company announced that it recorded quarterly bookings of only €2.63 billion—a 53% decline from €5.6 billion in the second quarter of 2024.  ASML also announced that it expected full year 2025 net sales to be between €30 billion and €35 billion, in the lower half of the Company's initial range of between €30 billion and €40 billion.  Defendant Christophe Fouquet, the Company's recently appointed President and Chief Executive Officer, explained that, "[w]hile there continue to be strong developments and upside potential in [artificial intelligence], other [semiconductor] market segments are taking longer to recover" and admitted that "[i]t now appears the recovery is more gradual than previously expected."  ASML also materially reduced its gross margin target to between 51% and 53%, down from its prior guidance of between 54% and 56%.

11.     In response, the price of ASML ordinary shares plummeted $141.84 per share, or approximately 16.3%, from a close of $872.27 per share on October 14, 2024, to close at $730.43 per share on October 15, 2024.

12.     During the accompanying earnings call with investors held before the U.S. markets opened on October 16, 2024, ASML's Chief Financial Officer, Defendant Roger Dassen,

attributed the poor bookings results to "a reflection of the slow recovery in the traditional [semiconductor] end markets as customers remain cautious in the current environment." Additionally, Defendant Fouquet admitted that the semiconductor industry "recovery will extend well into 2025," leading to "a reduced growth curve in 2025 and an [] overall reduction of our lithography demand." Critically, he stated that "I think today without [artificial intelligence], the market would be very sad if you ask me[,] . . . the recovery is not what I think [anyone] had wished for." Defendants Fouquet and Dassen both revealed that ASML's sales in China had declined to "a more normalized" level, which Defendant Dassen quantified as being "around 20%" of the Company's total business and its projected revenue in 2025, representing a significant decline over the prior year. Defendant Dassen further disclosed that the decline in ASML's sales to China would also negatively impact the Company's gross margins.

13.     A Wolfe Research analyst, expressing concern, noted that "[g]iven the long lead times and strong visibility that ASML typically has with customers, ***it's rare for ASML to surprise investors as they just did***."

14.     On this news, the price of ASML ordinary shares fell an additional $46.91 per share, or approximately 6.4%, from a close of $730.43 per share on October 15, 2024, to close at $683.52 per share on October 16, 2024.

15.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) the issues being faced by suppliers, like ASML, in the semiconductor industry were much more severe than Defendants had indicated to investors; (2) the pace of recovery of sales in the semiconductor industry was much slower than Defendants had publicly acknowledged; (3) Defendants had

created the false impression that they possessed reliable information pertaining to customer demand and anticipated growth, while also downplaying risk from macroeconomic and industry fluctuations, as well as stronger regulations restricting the export of semiconductor technology, including the products that ASML sells; and (4) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

16.     As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's ordinary shares on the Nasdaq, Plaintiff and other members of the Class have suffered significant damages.

## II.    <u>JURISDICTION AND VENUE</u>

17.     Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

18.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because ASML's shares are traded on the Nasdaq and many of the acts and conduct that constitute the violations of law complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

20.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

### III.    **PARTIES**

21.    Plaintiff City of Hollywood Firefighters' Pension Fund is a pension fund established for the benefit of current and retired firefighters of the City of Hollywood, Florida.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased ASML ordinary shares on the Nasdaq at artificially inflated prices during the Class Period and has been damaged thereby.

22.    Defendant ASML is a Dutch corporation headquartered at De Run 6501, 5504 DR Veldhoven, The Netherlands.  ASML's ordinary shares are listed on the Nasdaq under the ticker symbol "ASML."

23.    Defendant Christophe Fouquet was the Company's Chief Business Officer through April 24, 2024, and has served as the Company's President and Chief Executive Officer since April 25, 2024.

24.    Defendant Roger Dassen is the Company's Executive Vice President and Chief Financial Officer.

25.    Defendant Peter Wennink served as the Company's President and Chief Executive Officer until April 24, 2024.

26.    Defendants Fouquet, Dassen, and Wennink are collectively referred to herein as the "Individual Defendants."

27.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of ASML's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to

material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

28.    ASML and the Individual Defendants are collectively referred to herein as "Defendants."

IV.    **SUBSTANTIVE ALLEGATIONS**

A.    **Background**

29.    ASML is a Dutch corporation with its principal executive offices in Veldhoven, The Netherlands.  ASML designs, develops, integrates, markets, and services photolithography machines for use in the semiconductor fabrication process.  It is the largest supplier for the semiconductor industry and the sole supplier in the world of extreme ultraviolet lithography photolithography machines that are required to manufacture the most advanced chips.

30.    Before the Class Period, in a November 10, 2022 press release issued by the Company in connection with its Investor Day on November 11, 2022, ASML announced that it "expect[s] longer-term demand and capacity [to] show[] healthy growth," and as a result, the Company expects "to achieve . . . annual revenue between approximately €30 billion and €40 billion," with a gross margin of between 54% and 56%, in 2025.

31.    In March 2023, the Dutch government announced its intention to implement new export controls on semiconductor technology.  These restrictions would limit the products that ASML could sell to customers in China, an important growth market for the Company.  Those new regulations were published at the end of June 2023, and became effective in September 2023. As the implementation of the export restrictions loomed, chipmakers in China rushed to place

orders for ASML's products, causing a surge in demand and the Company's sales beginning in the second half of 2023.

32.    The semiconductor industry experienced a significant downturn in 2023, with *Forbes* explaining in an August 2024 article on the industry that "[t]he 2023 slowdown . . . was the result of a confluence of factors that include[d] rising inflation, geopolitical unrest, and the lasting effects of the global pandemic."  The rise in demand from customers in China spurred by impending tighter export controls on semiconductor technology, however, helped to offset the negative impact that a slowdown in the semiconductor industry would have on ASML's business.

**B.    Defendants' False and Misleading Statements**

33.    The Class Period begins on January 24, 2024, when the Company announced its fourth quarter 2023 and full-year 2023 results.  The Company reported 2023 net sales of €27.6 billion, representing an approximately 30% year-over-year increase, and indicated that "2024 [is] expected to be a transition year with sales similar to 2023."  Defendant Wennink explained that while the "semiconductor industry continues to work through the bottom of the cycle," "there are some positive signs" as "[i]ndustry end-market inventory levels continue to improve and litho tool utilization levels are beginning to show improvement."  Importantly, he trumpeted that the Company's "strong order intake in the fourth quarter clearly supports future demand," including supporting "significant growth . . . for 2025."

34.    On the accompanying investor call held that same day, Wennink said that "[b]ased on discussions with our customers and supported by our strong backlog, we currently expect 2025 to be a strong year driven by a number of factors," including, "secular growth drivers in the semiconductor end markets," "industry expect[ations] to be in the middle of a cyclical upturn in 2025" (i.e., improved industry sentiment), and "new fabs [(i.e., new semiconductor manufacturing plants)] that are being built across the globe, in some instances clearly supported by several

government incentive plans."   Moreover, Wennink assured investors that "we clearly remain confident in our long-term growth opportunity" as "we are seeing the first signs, the positive signs of a recovery, which is basically the data we get on inventory levels, but also we see our utilization rates going up again."

35.    Defendant Wennink was asked by an analyst about his current thoughts on the Company's 2025 net sales guidance of between €30 billion and €40 billion. Wennink responded: "I mean we feel a bit more comfortable on 2025 after having received €9.2 billion of orders . . . So I think you get the vote of confidence from our customers on what we thought was going to happen, which is always good."  He added further that "[w]hen you talk about the middle of the range, I said . . . *I thought the low end of the range was too conservative*.  That's what I said.  I can make it in the middle of the range or the high end of the range."

36.    During that earnings call, Defendant Wennink also downplayed concerns about the impact that tighter export regulations would have on ASML's revenue from products the Company sells to customers in China.  While ASML expected the restrictions to impact its revenue from products sold to China by 10% to 15%, Defendant Wennink reassured investors that "we continue to see strong demand . . . in China."  Defendant Dassen further emphasized that "one thing is for sure, China will remain very strong in our numbers also in 2024."

37.    On April 17, 2024, the Company reported its first quarter 2024 results.  ASML reported net bookings of only €3.611 billion—down from net bookings of €9.186 billion in the fourth quarter of 2023.  Nevertheless, Defendant Wennink reassured investors that "[o]ur outlook for the full year 2024 is unchanged, with the second half of the year expected to be stronger than the first half, in line with the industry's continued recovery from the downturn."

38.     On the related investor call held that same day, Defendant Wennink explained that "overall semiconductor inventory levels continue to improve, trending towards more healthy levels . . . all in line with the industry's continued recovery from the downturn."  Defendant Fouquet also said that "[l]ooking longer term . . . it appears we are passing through the bottom of this specific cycle, and we expect an industry recovery over the course of 2024" and that, "[b]ased on the discussions with our customers and support[ed] by our strong backlog, we expect 2025 to be a strong year."  Importantly, Defendant Dassen proclaimed that "our expectation of a very strong recovery into 2025 has by no means changed."  In a further attempt to reassure investors, Dassen emphasized that, "if we look at the plans of some of our large customers, and you talk about foundry, . . . it's pretty clear that in the next couple of quarters, significant orders need to come in."  Moreover, Dassen explained that the "market being in recovery means that customers are first driving up the utilization of their tools, which is exactly what they're doing, and we noticed that[,] . . . that's exactly why we've also said on the call that we believe that we're going to see momentum building up in the course of this year with a much stronger second half."

39.     During that earnings call, Defendant Dassen also downplayed the decline in ASML's orders during the quarter, stating that ASML's "order flow can be lumpy and may not be evenly distributed over the year."  Dassen claimed that ASML remained strongly positioned to achieve its 2025 financial guidance, noting that the Company needed only €4 billion in orders per quarter in the remaining three quarters of 2024 to hit €35 billion in revenue in 2025, the mid-point of its guidance.  Dassen further represented that ASML would benefit from a "significant uptick" in orders in 2025.  As a result, Dassen stated that the Company was "not looking at the low end" of its guidance range, but rather towards a "very strong recovery" that supported ASML's ability to achieve its lofty targets.

40.    On July 17, 2024, ASML announced its second quarter 2024 financial results, reported quarterly net sales that were in line with expectations and reiterated that it "continues to expect 2024 total net sales to be similar to 2023, supported by a strong second half year."  In the press release announcing the Company's financial results, Defendant Fouquet assured investors that "overall semiconductor inventory levels continue to improve."

41.    Defendant Fouquet described 2024 as a "transition year" for ASML during the accompanying earnings call, and reiterated the Company's ability to achieve its 2025 guidance. Fouquet pointed investors to "strong developments in [artificial intelligence]" that were driving "industry recovery and growth" from which ASML would benefit.  Fouquet further explained that, "[w]hile the slope of the industry recovery is still uncertain[,] based on discussion with our customer[s] and supported by our strong backlog, we expect 2025 to be a strong year."

42.    During the earnings call, an analyst questioned ASML's management about demand from customers in China and the portion of the Company's revenue expected to be driven by those customers.  In response, Defendant Dassen downplayed ASML's need for continued high demand from China in order to meet its financial targets, stating that "the way we look at the demand for our tools is not from a specific geography in this case, China," but rather "[i]t is the global demand for [chips] that drives our modeling."

43.    The above statements identified in paragraphs 33-42, were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) the issues being faced by suppliers, like ASML, in the semiconductor industry were much more severe than Defendants had indicated to investors; (2) the pace of recovery of sales in the semiconductor industry was much slower than Defendants had publicly acknowledged; (3) Defendants had

created the false impression that they possessed reliable information pertaining to customer demand and anticipated growth, while also downplaying risk from macroeconomic and industry fluctuations, as well as stronger regulations restricting the export of semiconductor technology, including the products that ASML sells; and (4) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

### C. The Truth Emerges

44.     Investors began to learn the truth about ASML's financial prospects on October 15, 2024, when the Company announced its third quarter 2024 results a day earlier than previously scheduled, due to a "technical error." Notably, ASML revealed quarterly bookings of only €2.63 billion. These bookings represented a 53% decline from the €5.6 billion in bookings during the second quarter of 2024 and missed analysts' estimates by a staggering €3 billion. ASML also announced that it expected full year 2025 total net sales to be between €30 billion and €35 billion, which is in the bottom half of the €30 billion to €40 billion range that the Company initially provided on November 10, 2022, in connection with its 2022 Investor Day on November 11, 2022. The Company further announced that it had lowered its 2025 gross margin guidance to between 51% and 53% (versus a previous range of between 54% and 56%).

45.     In the same announcement, Defendant Fouquet explained that, "[w]hile there continue to be strong developments and upside potential in [artificial intelligence], other [semiconductor] market segments are taking longer to recover" and "[i]t now appears the recovery is more gradual than previously expected."

46.     In response to these surprising revelations, the price of ASML ordinary shares fell $141.84 per share, or approximately 16.3%, from a close of $872.27 per share on October 14, 2024, to close at $730.43 per share on October 15, 2024.

47.    During the accompanying earnings call held before the U.S. markets opened on October 16, 2024, Defendant Dassen characterized the poor bookings results and the lowered guidance expectations for 2025 as being "a reflection of the slow recovery in the traditional [semiconductor] end markets as customers remain cautious in the current environment." Defendant Fouquet also admitted that the semiconductor industry "recovery will extend well into 2025," leading to "a reduced growth curve in 2025 and an [] overall reduction of our lithography demand." Critically, Fouquet stated that, "I think today without [artificial intelligence], the market would be very sad if you ask me" and that "the recovery is not what I think [anyone] had wished for."

48.    On the same call, ASML also revealed that its sales in China had declined to "a more normalized" level, expecting China sales to be around 20% of the Company's total revenue in 2025, implying a significant decline compared to the prior year. Further, the Company disclosed that because a significant portion of its business in China involves sales of photolithography machines that generally boast higher profit margins than machines sold outside of China, the decline in China sales would negatively impact the Company's gross margins. The Company attributed the normalization of demand from customers in China to two reasons: (1) ASML having "over-deliver[ed]" on the surge of order backlog from customers in China that had built up in 2023 and 2024 after the announcement of regulations restricting the export of semiconductor technology to customers in China; and (2) the potential impact of additional export restrictions.

49.    As noted by a Wolfe Research analyst in a report on October 16, 2024:

**It's rare that ASML surprises investors in this manner**. **Part of the surprise here is that many of these potential issues (China, INTC) were known 90 days ago, yet management continued to reiterate their €35-40bn guide through the quarter**, and the strength of their CY25 backlog appeared to support that. Given the long lead times and strong visibility that ASML typically has with

customers, it's rare for ASML to surprise investors as they just did
(emphasis added to second sentence).

50.     On this news, the price of ASML ordinary shares fell an additional $46.91 per share, or approximately 6.4%, from a close of $730.43 per share on October 15, 2024, to close at $683.52 per share on October 16, 2024.

## V.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all investors who purchased or otherwise acquired ASML ordinary shares on the Nasdaq during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of ASML, and their families and affiliates.

52.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

53.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

        a.     Whether Defendants violated the Exchange Act;

        b.     Whether Defendants omitted and/or misrepresented material facts;

        c.     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

        d.     Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.       Whether the prices of ASML ordinary shares on the Nasdaq were artificially inflated; and

f.       The extent of damage sustained by members of the Class and the appropriate measure of damages.

54.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

55.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions.  Plaintiff has no interests that conflict with those of the Class.

56.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

57.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.       Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.       The omissions and misrepresentations were material;

c.       The Company's ordinary shares on the Nasdaq traded in an efficient market;

d.       The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's ordinary shares on the Nasdaq; and

e.       Plaintiff and the Class purchased ASML ordinary shares on the Nasdaq between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

58.     At all relevant times, the market for the Company's ordinary shares on the Nasdaq was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   <u>NO SAFE HARBOR</u>

59.     Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.   <u>LOSS CAUSATION/ECONOMIC LOSS</u>

60.     Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. The prices of Company ordinary shares on the Nasdaq significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

causing investors' losses.  As a result of their purchases of ASML ordinary shares on the Nasdaq during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX.    SCIENTER ALLEGATIONS

61.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of ASML ordinary shares on the Nasdaq during the Class Period.

## X.    CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violation of Section 10(b) of the Exchange Act and**
**SEC Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

62.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

63.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase ASML ordinary shares on the Nasdaq at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

64.    Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's ordinary shares on the Nasdaq in an effort

to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

65.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's ordinary shares on the Nasdaq during the Class Period.

## COUNT II

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

66.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

67.    The Individual Defendants acted as controlling persons of ASML within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the activities giving rise to the securities violations as alleged herein, and exercised the same.

69.    As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of ASML ordinary shares on the Nasdaq during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.    Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.    Such other and further relief as the Court may deem just and proper.

## XI.    **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 14, 2024                               Respectfully submitted,

*/s/ Hannah Ross*
Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff City of Hollywood*
*Firefighters' Pension Fund*

Robert D. Klausner
**KLAUSNER, KAUFMAN, JENSEN**
  **& LEVINSON, P.A.**
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff City of*
*Hollywood Firefighters' Pension Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Alexander Diaz, on behalf of City of Hollywood Firefighters' Pension Fund ("Hollywood Firefighters"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hollywood Firefighters. I have reviewed the complaint with Hollywood Firefighters' legal counsel. Based on legal counsel's knowledge and advice, Hollywood Firefighters has authorized the filing of the complaint.

2. Hollywood Firefighters did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hollywood Firefighters is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hollywood Firefighters' transactions in the ASML Holding N.V. securities that are the subject of this action are set forth in the chart attached hereto.

5. Hollywood Firefighters has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *City of Hollywood Firefighters' Pension Fund v. Inspire Medical Systems, Inc.*,
   No. 23-cv-3884 (D. Minn.)
   *City of Hollywood Firefighters' Pension Fund v. Atlassian Corporation*,
   No. 23-cv-519 (N.D. Cal.)

6. Hollywood Firefighters has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for appointment as lead plaintiff or was not appointed lead plaintiff:

   *Skolnick v. Evolution AB (publ)*, No. 24-cv-326 (E.D. Pa.)
   *Vazquez v. Masimo Corporation*, No. 23-cv-1546 (S.D. Cal.)

7. Hollywood Firefighters has served as a representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *City of Hollywood Firefighters' Pension Fund v. UnitedHealth Group Incorporated*, No. 24-cv-1743 (D. Minn.)

8. Hollywood Firefighters will not accept any payment for serving as a representative party on behalf of the Class beyond Hollywood Firefighters' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 12 day of November, 2024.

Alexander Diaz, Chairman
*City of Hollywood Firefighters' Pension Fund*

**City of Hollywood Firefighters' Pension Fund**
**Transactions in ASML Holding N.V.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 4/29/2024 | 720 | 908.4699 |
| Purchase | 5/16/2024 | 260 | 924.60 |
| Purchase | 7/25/2024 | 110 | 862.94 |
| Purchase | 7/25/2024 | 320 | 869.37 |
| Purchase | 9/25/2024 | 90 | 817.63 |
| | | | |
| Sale | 3/12/2024 | (13) | 981.1049 |
| Sale | 4/4/2024 | (450) | 975.9773 |
| Sale | 5/3/2024 | (100) | 903.53 |
| Sale | 6/21/2024 | (143) | 1,033.36 |
| Sale | 7/30/2024 | (250) | 861.45 |
| Sale | 8/6/2024 | (30) | 858.25 |
| Sale | 9/10/2024 | (25) | 749.96 |