# Exhibit 96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re ASML Holding N.V. Securities Litigation* | Case No. 1:24-cv-08664-NRB-JW |

**DECLARATION OF [redacted]**

[redacted] hereby declares as follows:

1. Counsel for ASML provided me with a copy of the Amended Complaint in this action. I believe that I am the person identified as Former Employee 7 ("FE7").

2. I received three phone calls from personnel at Kessler Topaz Meltzer & Check, LLP about this case. The first call, in late April, lasted under five minutes and ended after I informed plaintiffs' personnel about my dates of employment and that I had never worked at ASML customer sites in Europe. The second call, in May, lasted approximately 30 minutes. The third call, also in May, lasted approximately 30 minutes. Just before the third call and at my request, plaintiffs' personnel sent me an email summary of what I said during the second call. During the third call, I focused on correcting the email summary that was sent to me. The summary contained inaccuracies, inaccurate subtleties, misunderstandings, and some speculation.

3. Following the three conversations with plaintiffs' personnel, they never showed me a corrected summary, or a draft of the Amended Complaint or any portions that reference me.

4. Paragraph 261 of the Amended Complaint states that FE 7 worked from Intel's Hillsboro Oregon R&D location, but omits the context I provided plaintiffs' personnel about the unique aspects of that facility. I told them that the Hillsboro facility functioned differently from

others because it was an R&D facility not used for mass production, and that my work at Hillsboro would not give me visibility into Intel's mass production facilities or the facilities of other ASML customers.

5. Paragraph 261 states that "FE 7 reported that ASML had the capability of monitoring utilization and performance of the lithography machines … [through] equipment data logging within the machinery installed at a customer's location being connected to Intel's network." I told plaintiffs' personnel that the equipment data logging was intended to aid maintenance. I explained that ASML's machines can log certain equipment operation data showing when the machine is running (or not) and providing information about the functioning of different components, in order to run diagnostics and enable ASML's support engineers to service or maintain the machines. I also told plaintiffs' personnel that this equipment logging data does not reflect whether ASML's chipmaking customers had more, or less, demand for ASML's products and services. I explained that, on the one hand, the data could over-estimate use of the machines, such as if machines were being run for testing. I also explained that, on the other hand, the data does not tell you *why* particular machines may not be running at all times, whether because of some operational issue, or if the customer might be transitioning to, or purchasing, newer or more advanced nodes and systems, or some other reason. I also told plaintiffs' personnel that certain ASML customers have historically chosen to run their lithography machines at a relatively lower level regardless of their demand for more or newer ASML technology, products and services.

6. Paragraphs 261 and 262 say that FE 7 told plaintiffs' personnel that each customer controls who has access to the equipment logging data. I also told plaintiffs' personnel that such access is tightly controlled by each customer. That is not in the Amended Complaint. I

told plaintiffs' personnel that I could only view equipment logging data from the Hillsboro facility. I had no, and have no, basis to know or comment on the types of data shared by other customers or by Intel at other facilities. I also had no, and have no, basis to know whether Christophe Fouquet, Roger Dassen, Peter Wennink, or Skip Miller had access to, or reviewed, any equipment data that was logged.

7. Paragraph 262 states that "The monitoring … assists customer managers in developing contract requirements. For example, the contract manager could look at how many machines are at a certain site to determine how to delegate processes, equipment, and when to negotiate upgrades." That is not an accurate description of what I told plaintiffs' personnel. While I said that it was hypothetically possible to use the data as described, I also told them that the data was likely not used like that because there were too many barriers, including because ASML's customer accounts and sales personnel likely did not have access to the data or the know-how to read and understand it. I never observed anyone at ASML using the data logged by ASML equipment to develop contracts or negotiate upgrades.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 6-24-, 2025. [redacted]