BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • ILLINOIS • LOUISIANA • DELAWARE

ADAM WIERZBOWSKI
Adam@blbglaw.com
(212) 554-1510

August 17, 2026

**Via ECF**
The Hon. Naomi Reice Buchwald, U.S.D.J.
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *In re ASML Holding N.V. Securities Litigation*, No. 24-cv-8664-NRB-JW

Dear Judge Buchwald:

We begin by apologizing for giving the Court the impression that we were no longer relying on our former employee witnesses. That is not the case. We stand by them and will rely on them. To that end, after the Court's hearing last Thursday, we amended our Initial Disclosures that same evening and gave defense counsel the names and contact information of each witness. With the benefit of hindsight, we should have included them from the outset and avoided any implication that we did not stand by their accounts. We apologize and appreciate the Court's patience.

As explained at the hearing, our failure to include the former employees in Plaintiffs' Initial Disclosures had nothing to do with the reliability of the allegations in Plaintiffs' Complaint. The allegations are reliable, and Plaintiffs' counsel's investigative process was also reliable. We explained the parties' role in the case to the former employees, and explained that the witnesses' statements would be used in the Complaint. Plaintiffs' counsel directly communicated with the witnesses, participated in their interviews, and personally verified their statements before including them in the Complaint. We stand by the facts that these witnesses provided, and on which the Court relied in upholding the Complaint. However, we were too focused on the potential limit for total depositions in the case, and failed to consider what message our failure to include the witnesses in our Initial Disclosures would send to the Court. We ask for the Court's understanding and that the Court consider our good faith amendment of our disclosures for the benefit of Plaintiffs and the Class they seek to represent. A good faith disagreement with Defendants as to whether we were required to include the witnesses in our Initial Disclosures need not result in the conclusion that the witnesses are unreliable when, as explained below, counsel's investigation was reliable, the witnesses' reports are corroborated by numerous sources, and even the declarations submitted by Defendants either admit or do not challenge critical facts at the heart of the case.

During the hearing, Defendants' counsel cited for the first time two decisions, *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 798-800, 803 (S.D.N.Y. 2020), and *Belmont Holdings v. SunTrust Banks*, 896 F. Supp. 2d 1210, 1225-28 (N.D. Ga. 2012). We address these matters below.

**Plaintiffs' Initial Non-Identification of the Former Employees Should Not Be Interpreted as a Sign That They Lack Reliability**. Defendants argued that *Long Miao* stands for the proposition that Plaintiffs' decision to not identify the former employees in their Initial Disclosures means Plaintiffs believe these individuals lack reliability. Again, Plaintiffs stand behind the reliability of the former employees' allegations. Plaintiffs' counsel's rationale for not initially identifying them was the potentially limited number of depositions in the case, and the need to plan discovery going forward such that Plaintiffs would be able to depose all individuals necessary to prove their case. That same concern is supported by the parties' Rule 26(f) Report, filed the same day as the parties exchanged their Initial Disclosures.

Specifically, at pages 19-25 of the Rule 26(f) Report (ECF 139), the parties heavily disputed the number of allowable depositions, with Plaintiffs seeking 30, and Defendants permitting 15. Because Plaintiffs already reliably gathered facts from the former employees, we determined not to include them in the Initial Disclosures (before we amended them) to allow for other witnesses to be deposed. Thus, at a time when the number of depositions was not determined, and the scope of discovery was unknown, these considerations motivated us to initially not list the former employees in the Initial Disclosures. With the benefit of hindsight, we recognize that we should have included all the former employees in our Initial Disclosures to avoid an unnecessary and incorrect dispute over the reliability of these witnesses and requested leave from the Court for additional depositions.[1] We apologize for the misimpression our original strategy caused and emphasize that we continue to stand by all our former employee allegations.

**Plaintiffs' Investigation Complied with *Long Miao* and *Millennial Media***. *Long Miao* concerns the reliability of vaguely-described sources in a short seller report. 442 F. Supp. 3d at 797. The *Long Miao* complaint did not "allege any independent corroborative facts," the witnesses' titles and responsibilities were "not described at a sufficient level of particularity," and plaintiffs' counsel did "nothing whatsoever" to confirm their identities or statements. *Id*. at 802-03. The *Long Miao* decision relies on *In re Millennial Media, Inc. Securities Litigation*, 2015 WL 3443918 (S.D.N.Y. May 29, 2015). In *Millennial Media*, Judge Engelmeyer scrutinized how the plaintiffs' counsel never (i) personally spoke to the former employees before filing the complaint; (ii) told the former employees they would be included in a complaint; or (iii) verified with the former employees the allegations attributed to them. 2015 WL 3443918, at *10-12.

Here, Plaintiffs' counsel were aware of and followed Judge Engelmayer's guidance in *Millennial Media*. We followed all the safeguards he identified, including telling the witnesses that their information would be used in a complaint and having lawyers personally speak with the witnesses and verify their allegations. Coquin Decl., ECF 104-2 at ¶¶8, 18, 27, 29, 44-46; Bobe-Saleh Decl., ECF 104-3; Monks Decl., ECF 104-4 at ¶¶6-16; Seidel Decl., ECF 104-5 at ¶¶12-16. Plaintiffs also described the witnesses in the Complaint with such specificity that defense counsel was able to contact at least five of them. The former employees' allegations also corroborate one

[1] Plaintiffs' counsel are mindful and appreciative of Your Honor's statement during the hearing that the Court has no history of denying reasonable requests to expand the number of depositions, and we respectfully refer to pages 19-22 of the July 13, 2026 Rule 26(f) Report for why 30 depositions would be appropriate in this case. ECF 139.

another, as well as admissions by Samsung and Defendants. *See* Complaint ¶¶116, 146.

**The Former Employee Declarations Admit Key Facts and Do Not Dispute Key Allegations**. Defense counsel also cited *Belmont Holdings*, where the court granted a motion for reconsideration based on former employee declarations (which the court considered new evidence). 896 F. Supp. 2d at 1224-25. But the former employee was not employed by the defendants during the class period and there were "***no disputed facts***" between his declarations and the investigator's declaration regarding the former employee's knowledge. *Id*. at 1225.

Here, by contrast, Plaintiffs' counsel and their investigators dispute the contentions raised in the declarations. *See* ECF 104-2; ECF 104-3; ECF 104-4; ECF 104-5. Further, and critically, the former employees' own declarations admitted the accuracy of numerous material facts. For example: (i) FE1's declaration admitted that ASML machines at Intel's Chandler, Arizona facility were cold-bagged in 2022 and that "Intel did not ramp all of the Chandler cold-bagged machines back up in 2023 and 2024" (ECF 94-92 at ¶6 (referring to Complaint ¶101)); (ii) FE3's declaration admitted that there were shut down or cold-bagged machines at the Intel fabs in Chandler, and that they were shipped to other locations and customers (ECF 94-93 at ¶6 (referring to Complaint ¶108)); (iii) FE5's declaration admitted there was a delay in 2024 in constructing the first fab at Samsung's Texas location such that FE5 was offered the ability to move locations, and ASML sold the machines meant for Texas to other customers (ECF 94-94 at ¶7 (referring to Complaint ¶¶113, 114)); (iv) FE5's declaration did not dispute that in 2023, Samsung's Korea fabs were operating at 70% utilization (*id*. at ¶8 (referring to Complaint ¶114)); and (v) FE7's declaration admitted that "ASML's machines can log certain equipment operation data showing when the machine is running (or not)." ECF 94-96 at ¶5.

In addition, although defense counsel had the opportunity to ask the former employees who submitted declarations about all the allegations in the Complaint, the declarations do not rebut numerous statements from them. *See* Coquin Decl., ECF 104-2 at ¶¶12, 16, 25, 42 and 52 (discussing unrebutted allegations in Complaint ¶¶100, 101, 108, 112, 113, 115, 258, 260, 261 and 262). This is no oversight. For example, FE1's declaration does not dispute that when he started in 2022, Intel was supposed to open a fab within five months in Ohio, but three years later, nothing was started there. *See* Complaint ¶100. FE6's declaration does not dispute that he told the investigator there were upgrade postponements or cancellations at TSMC. ECF 94-95 at ¶5 (referring to Complaint ¶118).[2] Similarly, the Complaint's allegations related to FE2 and FE4 in paragraphs 102, 103, 104, 105, 106, 107, 108, 111 and 260 are unrebutted. And Plaintiffs' allegations in paragraphs 199-127 concerning ASML's customers in China do not rely on the former employees.

We thank the Court for its consideration of this submission and respectfully submit that the Court should deny Defendants' motion for reconsideration. The factual disputes presented by Defendants are not suitable for resolution on a motion to dismiss, and they do not undermine the reliability of Plaintiffs' Complaint. Discovery is the proper process to resolve these disputes. This is particularly true because Plaintiffs' counsel's investigation included appropriate disclosures to the former employees, counsel had direct contact with them, and counsel verified their statements.

---

[2] FE6's declaration offers his belief about the cause of those events (ECF 94-95 ¶5), but Plaintiffs' investigator states he had asked FE6 repeatedly about the cause, and FE6 had told him he did not know. ECF 104-4 ¶17.

Respectfully submitted,

Adam Wierzbowski

cc: Counsel of Record Via ECF