UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

IN RE ASML HOLDINGS N.V. SECURITIES LITIGATION

**MEMORANDUM AND ORDER**

24 Civ. 8664 (NRB)

-----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is a motion brought by defendants ASML Holding N.V. ("ASML" or the "Company"), Christophe Fouquet, Roger Dassen, Peter Wennink, and Skip Miller (collectively, "defendants") for reconsideration of the Court's March 27, 2026 Memorandum and Order (the "MTD Order") denying in part defendants' motion to dismiss the amended complaint filed under the Securities Exchange Act of 1934. ECF Nos. 125, 126 ("Mot.").

**BACKGROUND**

Since the filing of the MTD Order, certain allegations contained in plaintiffs' amended complaint, ECF No. 84 (the "Amended Complaint"), sourced to former employees and broadly concerning customer utilization and demand for the Company's products, have become the focal point of the parties' arguments. Specifically, the Amended Complaint contains allegations that are sourced to seven different former employees. In connection with their motion to dismiss, defendants submitted declarations signed by five of those seven former employees, in which the former

employees denied or contradicted the allegations sourced to them in the Amended Complaint. ECF Nos. 91-92-92-96.

In opposition to defendants' motion to dismiss, plaintiffs' counsel submitted affidavits from an attorney for co-lead counsel, Bernstein Litowitz Berger & Grossman LLP, and from investigators who participated in outreach to the former employees. ECF Nos. 104-2—104-5. Plaintiffs' declarations describe the procedures and practices that were followed when contacting the former employees and assert that the information contained in the former employees' declarations contradicts the information that the former employees provided plaintiffs' representatives.

It is beyond cavil that there are material differences between the statements attributed to the former employees in the Amended Complaint and the declarations from those former employees submitted by the defendants. Faced with these contradictory declarations, in the MTD Order, the Court applied established law in determining that it was impermissible at the motion to dismiss stage for a court to resolve the contradictions between the complaint and the declarations:

> Defendants, in effect, ask the Court to consider factual disputes and issues of credibility, which are not appropriately determined at the motion to dismiss stage. Accordingly, the Court will credit the [former employee] statements included in the complaint for purposes of this motion and will not consider defendants' declarations. This approach is consistent with our obligation at

> the motion to dismiss stage to "accept[] all factual allegations in the complaint [as true] and draw[] all reasonable inferences in the plaintiff's favor."

MTD Order at 22 (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)); see also In re Cognizant Tech. Sols. Corp. Sec. Litig., 2018 WL 3772675, at *12 (D.N.J. Aug. 8, 2018) (noting that courts consistently "refuse[] to strike allegations attributed to confidential witnesses a[t] the pleading stage when presented with declarations of those witness that are supposedly inconsistent with the allegations in the complaint").

Thus, in accordance with this caselaw, we evaluated the sufficiency of the Amended Complaint as filed and denied defendants' motion to dismiss in part, allowing most of plaintiffs' claims to proceed.

Defendants then moved to reconsider the Court's decision. ECF No. 125. Plaintiffs opposed the motion, ECF No. 129, and defendants replied, ECF No. 132.

While defendants' motion for reconsideration was pending, the parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(i), which in part requires disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses[.]" Upon receipt of plaintiffs' initial disclosures, defendants sent

a letter to plaintiffs, "not[ing] that Lead Plaintiffs' Initial Disclosures do not include . . . the seven anonymous ASML former employees" and asking plaintiffs to "please amend [their] Initial Disclosures" if "the [former employees] are still individuals whom Lead Plaintiffs 'may use to support [their] claims.'" ECF No. 143-1 (third alteration in the original). Plaintiffs responded to defendants' letter, asserting that "Lead Plaintiffs' Initial Disclosures comply with Rule 26(a)(1)" and "reserve[ing] the right to supplement [their] disclosures during the course of fact discovery, consistent with Rule 26(e)." ECF No. 143-2.

On July 20, 2026, defendants informed the Court of plaintiffs' decision not to include the former employees in their initial disclosures and requested that the "Lead Plaintiffs' abandonment of the [former employees] as individuals Lead Plaintiffs 'may use' to support their claims should be considered by the Court in deciding the Motion for Reconsideration." ECF No. 140 at 2. Plaintiffs filed their own letter with the Court on July 23, 2026, contending that "Defendants' assertions lack any legal support, and Plaintiffs have not abandoned their reliance on the [former employees]' allegations." ECF No. 141 at 1. Rather, plaintiffs explained that their initial disclosures "identified the witnesses on which they will most likely rely to provide evidence going forward, and their non-inclusion of the [former employees] in their initial disclosures does not retroactively impact Plaintiffs'

allegations in the Complaint." Id. Plaintiffs continued, "should Plaintiffs determine that they may use any of the [former employees] to supply evidence in this Action, they will amend their initial disclosures to include them[.]" Id. at 1-2.[1]

On August 13, 2026, the Court held a lengthy, in-person conference to discuss the parties' letters and hear oral argument on defendants' motion for reconsideration. At the conference, plaintiffs' counsel raised a new explanation for their refusal to include the former employees in their initial disclosures: Namely, that plaintiffs were concerned they would not be allowed a sufficient number of depositions. As plaintiffs explained to the Court, "[i]f plaintiffs had listed the seven former employees in their initial disclosures, it is very likely that defendants would, based on [that] representation, immediately start taking [the former employees'] depositions. [Plaintiffs] would have to cross-notice their depositions, most likely, in order to rely on their statements[,]" which would use several of plaintiffs' allotted depositions. ECF No. 144 ("OA Tr.") at 5:7-5:11.[2]

---

[1] Plaintiffs appear to misread Federal Rule of Civil Procedure 26(e). Rule 26(e) provides that a party must supplement or correct their initial disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," or "as ordered by the court." Rule 26 does not contemplate supplementation of an initial disclosure to amend counsel's strategic decision not to include a potential witness known to both parties to the litigation at the time the initial disclosure is made.

[2] Assuming the correctness of plaintiffs' claim that they would have needed to cross-notice depositions of the former employees, the Court notes, as we did on the record, and as plaintiffs have since acknowledged, that if plaintiffs' concern was truly a limit on the number of depositions, they could have simply

Also at oral argument, defendants referred the Court to several cases, of which the Court was not previously aware, addressing allegations sourced to former employees or confidential witnesses in a complaint that were subsequently called into question. In response to the Court's request, defendants provided a list of cases to the Court via email.

Further, following oral argument, plaintiffs filed another letter with the Court reiterating that they have not abandoned the allegations sourced to the former employees and that their "failure to include the former employees in Plaintiffs' Initial Disclosures had nothing to do with the reliability of the allegations in Plaintiffs' Complaint." ECF No. 146. Plaintiffs' counsel also informed the Court that following the conference, plaintiffs amended their initial disclosures to now include the seven former employees referenced in the Amended Complaint. Id.

## I. The Issue Presented

Plaintiffs' decision not to include the former employees as potential witnesses in their initial Rule 26 disclosures, followed by their decision to maintain that position despite defendants' request that they list the former employees "[t]o the extent the [former employees] are still individuals whom Lead Plaintiffs 'may

made a request to the Court to expand the number of depositions permitted in this case. OA Tr. at 5:13-5:16. Indeed, plaintiffs already had requested additional depositions by the time of the hearing, a request the Court would have ruled on had the issue of plaintiffs' disclosures not been raised.

use to support [their] claims," ECF No. 143-1 (alteration in original), as well as their decision not to include the former employees as possible witnesses until weeks later following an on-the-record conference with the Court raises a serious structural issue. As previewed at oral argument,[3] the fundamental issue is whether a plaintiff can rely on statements of former employees or confidential witnesses to sustain a complaint and then decide not to rely on those witnesses to prove their case. This structural issue is acute here because the plaintiffs in their complaint, and the Court in the MTD Order, heavily relied on the statements of the former employees, especially on the issues of scienter and knowledge of falsity.

As noted, prior to the in-Court conference, plaintiffs had at least two opportunities to list the former employees as witnesses and yet did not do so. Also as noted earlier, plaintiffs' explanation for this decision simply does not withstand even cursory review.[4] Indeed, plaintiffs did not list the former employees in their initial disclosures until after oral argument, during which the Court had offered its view that the failure to list the former employees could be interpreted as either reflecting

---

[3] OA Tr. at 2:19-2:23 (The Court: "I think a way to state the issue, maybe not the only way, but a way is . . . can plaintiffs continue to rely on the statements of the former employees, including in their efforts to defeat the motion to reargue, given that they have no intention of calling them as witnesses.")

[4] See supra n.2.

a loss of faith or a decision by the former employees not to testify. Upon additional consideration, and with information gained at the conference, there is a third possible explanation: Plaintiffs' counsel may have decided that, under the circumstances and as a practical matter, plaintiffs cannot call the former employees as witnesses regardless of whether plaintiffs are prepared to defend their initial reliance on them.

## II. Relevant Legal Authority

The cases submitted to the Court by defendants essentially cover the relevant, albeit limited, legal landscape. A review of those cases, while not directly on point, does introduce the practical and procedural challenges before this Court.

To begin, Judge Engelmayer's opinion in In re Millennial Media, Inc. Securities Litigation, 2015 WL 3443918 (S.D.N.Y. May 29, 2015), sets forth a protocol[5] for the steps that plaintiffs' counsel should take before filing to ensure the accuracy of information sourced to confidential witnesses and for the

[5] The protocol that Judge Engelmayer outlined contained two parts: the first designed to ensure the accuracy of the complaint and the second designed to ensure fair treatment of witnesses. More specifically, Judge Engelmayer opined that "it is reasonable to expect counsel, before filing the Complaint, to attempt to confirm with the witness the statements that counsel proposes to attribute to him and to assure that the Complaint is presenting these statements in fair context" and further that counsel must provide the witness with an opportunity to refute the statements attributed to them. Millenial Media, 2015 WL 3443918, at *11. Under the second part, plaintiffs' counsel is required to notify an anonymous former employee, before using his statements in a complaint, of counsel's "intention to quote him [and] of the possibility that being designated as a [confidential witness] may result in his identification." Id. at *13.

witnesses' protection. However, since that opinion followed the withdrawal of the plaintiffs' complaint upon the retraction of statements sourced to confidential witnesses, the opinion, while highly thoughtful and instructive, is advisory.[6]

In our case, plaintiffs aver that they "followed all the safeguards [Judge Engelmayer] identified, including telling the witnesses that their information would be used in a complaint and having a lawyer speak with the witnesses and verify their allegations." ECF No. 146 at 2. Plaintiffs' assertion that they "followed all the safeguards identified" by Judge Engelmayer appears to be overstated. While the declaration submitted by plaintiffs' counsel supports their compliance with the first part of the protocol articulated by Judge Engelmayer, the declarations do not support compliance with the second protocol. It is not clear from the declarations that each of the confidential witnesses was informed during their discussions with plaintiffs' counsel and investigators that they would be quoted in the Amended Complaint and that, although they would be referred to pseudonymously, their

[6] In Millennial Media, four days before the defendant's motion to dismiss was due, plaintiffs sought leave to file a "Supplemental Amended Complaint" to remove all references to one of their confidential witnesses who had informed plaintiffs "that he did not wish to be quoted in a Complaint." 2015 WL 3443918, at *1 (S.D.N.Y. May 29, 2015). Subsequently, three more confidential witnesses "stated that they objected to being quoted, even pseudonymously, in the Complaint." Id. at *3. Additional filings recounted that "[b]efore filing the FAC, plaintiffs' counsel had never spoken to 10 of the 11 persons identified as CWs" and "[n]one of the 11 CWs had been affirmatively notified that they would be quoted in a Complaint or designated there as a CW." Id. at *3-4.

true identity might well be revealed in the litigation. Indeed, while two of plaintiffs' three investigators aver that they "inform[ed] [each] former employee that the information the former employee [provided] may [have] be[en] included in a complaint filed in court," the declarations do not recount specifically telling the former employees that their identity might be revealed. ECF No. 106-3 ¶ 6; ECF No. 106-4 ¶ 6. Notably, the third investigator's declaration does not reflect that the same disclosure was given to the former employees that investigator interviewed. See ECF No. 106-2.[7]

Defendants also directed the Court to Belmont Corp. v. SunTrustBanks, Inc., 896 F. Supp. 2d 1210, 1224 (N.D. Ga. 2012).

[7] At oral argument, defendants argued that the Court must consider the declarations submitted on behalf of the former employees to determine whether the Amended Complaint's allegations bear "indicia of reliability" citing Long Miao v. Fanhua, Inc., 442 F. Supp. 3d 774(S.D.N.Y. 2020) and Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000). However, a review of these cases, particularly Long Miao, shows that the indicia of reliability required to credit the statements of confidential witnesses stems from the complaint itself, not competing fact declarations as here. See Long Miao, 442 F. Supp. 3d at 803 (finding that confidential witness statements "bear none of the indicia of reliability that have led courts applying Novak to sustain allegations" because they did "not contain any 'independent [well-pled] factual allegations'" to corroborate the statements, did not describe "the witnesses' positions and job responsibilities . . . at a sufficient level of particularity," the statements were "entirely unmoored in time," the content of the allegations was "insufficiently particular," and "plaintiff's counsel . . . appear[ed] to have done nothing whatsoever to confirm the identities or statements of the confidential sources."). Long Miao further sets forth four scenarios in which courts "generally have not credited the statements of CWs" including: first, where the confidential witnesses "are insufficiently described or whose descriptions do not suggest that they had been in a position to know the facts attributed them"; second, "statements of CWs that cannot situate in time relevant occurrences are sometimes disregarded"; third, "allegations by CWs that are insufficiently particular are apt to be discounted or disregarded"; and fourth, "courts have tended not to credit uncorroborated statements of CWs . . . with whom plaintiffs' counsel have not themselves interacted." Id. at 799-800. None of those scenarios appear to be present here.

Of the cases cited by defendants, Belmont is the most similar in posture to the case at bar. There, the district court denied a motion to dismiss a securities fraud complaint that relied in large part on statements of the former Group Vice President of Risk Management at SunTrust that were included in the plaintiffs' complaint. "Implicit in the Court's [order] denying Defendants' Motions to dismiss was the Court's accepting as true Plaintiff's claim that [the witness] had personal knowledge" relevant to the court's conclusions. Id. at 1220. After the motions to dismiss were denied, the witness filed declarations making clear that he had not been employed at SunTrust during the key time period and had "no personal knowledge of SunTrust's operations" after he was terminated. Id. at 1221. The defendants filed a motion for reconsideration that was granted because "[t]he Court's [order] relied on and accepted as true Plaintiff's assertion that Trapani had personal knowledge" of the relevant facts, and the subsequent declarations "clearly demonstrate[d] that [the witness] did not have personal knowledge" of those facts. Id. at 1224. Notably, the Belmont court explicitly determined that the subsequent declarations were "not recantations of testimony" but instead were "new evidence because the facts in them were unavailable prior to the filing of the Court's [order]." Id.

However, Belmont is distinguishable for two reasons.[8] Belmont does not dictate that this Court grant defendants' motion to reargue. First, and critically, the witness's declarations in Belmont were new evidence submitted in connection with the Belmont defendants' motion for reconsideration. Here, by contrast, defendants submitted the former employee declarations in connection with the motion to dismiss, and the Court expressly declined to consider those declarations based on the posture of the case. Second, in Belmont, the witness's declarations made clear that he could not have possibly known any of the information that the complaint attributed to him because he was not employed at the defendant company during the relevant time period. That is not the case here. While certainly contradicting and/or undermining the statements attributable to them, the former employees have not withdrawn the statements attributed to them to the dispositive degree that occurred in Belmont.

Finally, defendants referred the Court to Campo v. Sears Holdings Corp., 635 F. Supp. 2d 323 (S.D.N.Y. July 21, 2009), aff'd, Campo v. Sears Holdings Corp., 371 Fed. Appx. 212 (2d Cir. 2010). There, before the case was transferred to Judge Kaplan, Judge Sprizzo "denied defendants' motion to dismiss without prejudice based on information in the Complaint that allegedly was

[8] Of course, Belmont was also decided by a District Court in Georgia and as such is non-binding on this Court.

supplied by three confidential witnesses" and, in the same opinion, "ordered defendants to depose those confidential witnesses in order to determine . . . whether he should have granted defendants' motion to dismiss." Id. at 330 n.54 (emphasis added). On a subsequent motion to dismiss, "[w]ith respect to allegations derived from confidential witnesses," Judge Kaplan "consider[ed] only those allegations that later were corroborated by those witnesses in depositions" and ultimately dismissed the case. Id. at 330, 336. The use of limited depositions and dismissal based on those depositions was subsequently affirmed by the Circuit under the circumstances. Campo, 371 Fed. Appx. at 216 n.4 ("The court made no credibility determinations, nor did it weigh competing testimony. To the contrary, it relied upon the deposition testimony for the limited purpose of determining whether the confidential witnesses acknowledged the statements attributed to them in the complaint. Under these circumstances, we identify no error.").

Taken together, the cases provided by defendants stand for the following propositions: First, it is incumbent upon plaintiffs' counsel to ensure that confidential witnesses are fully informed of the potential consequences of their statements and are provided an opportunity to verify or refute the accuracy of statements attributed to them. Second, in limited circumstances, declarations contradicting the allegations

attributed to confidential witnesses in a complaint may be a basis to reconsider the denial of a motion to dismiss if the declarations constitute newly available evidence that fundamentally undermines the information attributed to a confidential witness(es). Third, following the denial of a motion to dismiss, the Court may limit discovery to facts and issues bearing on the information attributed to the confidential witnesses to determine if the complaint can be sustained on the basis of the confidential witnesses' statements.

As a result of the foregoing, it appears that the Court is left in much the same position that we were in at the motion to dismiss stage: The parties have filed warring declarations that, in essence, ask the Court to make a determination as to what allegations attributable to the former employees can still be used to evaluate the Amended Complaint. Indeed, the waters have been further muddied by the additional questions raised about whether, and to what extent, plaintiffs may rely on the former employee allegations after their decision initially, and for some time, to not list the former employees as individuals who may be used to support their claims. As we held in the MTD Order, that kind of determination as to the facts of this case and the credibility of certain statements is not appropriate for resolution at the motion to dismiss stage. The fact that the motion presently before us is one for reconsideration does not change that analysis, as the Court has not been presented with new evidence. Accordingly, the Court

is unable to disregard plaintiffs' allegations sourced from the former employees at this point in the litigation.

**III. Motion for Reconsideration**

We turn now to defendants' motion for reconsideration. Reconsideration of a prior decision is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Jones v. Donnelly, 487 F. Supp. 2d 418, 419 (S.D.N.Y. 2007) (citation and quotation marks omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 12, 2012) (citation omitted). In other words, "[a] motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (quoting Simon v. Smith & Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014)), aff'd 663 F. App'x 71 (2d Cir 2016).

Accordingly, "[t]he standard for granting [motions for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court," Shrader v. CSX Transp., Inc., 70 F.3d 225, 257 (2d Cir. 1996), or "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation and quotation marks omitted). Ultimately, motions for reconsideration "are committed to the sound discretion of the district court." In re Molycorp, Inc. Sec. Litig., 2016 WL 3002424, at *2 (S.D.N.Y. May 23, 2016) (citation and quotation marks omitted).

Defendants repeatedly frame their arguments as presenting "Overlooked Facts and Precedent [that] Require Dismissal[.]" See Mot. 1, 5, 6, 8, 9, 11. However, their arguments actually amount to little more than a disagreement with the Court's conclusions. Defendants do not point to new or overlooked facts or law but instead repackage the same arguments made in their motion to dismiss. For example, defendants take issue with the Court's conclusion in the MTD Order that "Defendants' supposed assurances . . . that 'guided to,' or stated 'they were on track' to, 'reach the upper-end of the €30-40 billion range' for 2025 . . . when Defendants allegedly knew they were 'unlikely to exceed the lower end" were actionable. Mot. 1 (citing MTD Order at 28-29, 57) (emphasis in original). Defendants argue that "[n]one of Defendants' . . . statements guided to, or opined ASML was 'on

track' for, the 'upper-end' of the €30-40B range. Nor did they predict ASML would exceed any 'lower end' range within the stated range" and that "[n]o reasonable investor could understand these statements, read together, as guiding away from and discounting the entire bottom half (€30-35B) of the range[.]" Mot. 1-2 (emphasis in original).

Defendants previously raised these arguments in connection with the motion to dismiss. See e.g., ECF No. 112 at 3 (defendants arguing that plaintiffs "continue to mischaracterize Defendants' 2025 revenue guidance . . . Defendants predicted only that 2025 revenue was unlikely to land 'on' a single point -- 'the low point' or 'the low end' (€30B) -- . . . and refused to guide to the €35B midpoint"). The Court considered, and rejected, these arguments in its MTD Order, specifically finding that "Plaintiffs' allegations, taken as true" as required at the motion to dismiss stage, "suggest that defendants knew that they were unlikely to exceed the lower end of their 2025 guidance," a conclusion that was further corroborated by additional allegations in the Amended Complaint. MTD Order at 29.

The repackaging of arguments raised in the motion to dismiss continues throughout defendants' motion for reconsideration. Compare Mot. 4 (arguing that certain statements were not actionable because "Defendants disclosed instances of fab delays, that orders for new fabs were still needed to meet 2025 guidance . . . and

that utilization levels were lowered and lower-than-normal"), with ECF No. 93 at 1 ("Defendants also never 'concealed' that leading-edge customers were suffering 'severe issues,' resulting in order cancellations or delays, low lithography tool utilization, and delayed fab constructions . . . Defendants disclosed those very things."); compare Mot. 7 (arguing that the MTD Order "overlooked that Defendants disclosed utilization rates."), with ECF No. 93 at 10 ("ASML . . . disclosed delayed orders and 'historically low' utilization levels 'beginning to show improvement[.]'").[9]

As set forth above, "[a] motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (quoting Simon v. Smith & Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014)), aff'd 663 F. App'x 71 (2d Cir 2016). Defendants' motion presents no new arguments, facts, or law that "alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 225, 257 (2d Cir. 1996). Accordingly, defendants' motion for reconsideration must be denied.

[9] The examples of repetitive arguments provided herein are not intended to be exhaustive, as defendants' motion repeatedly repackages arguments raised in connection with the motion to dismiss.

Finally, we note one additional argument that defendants raise. Defendants argue that the statement alleged in paragraph 216 of the Amended Complaint "appears to have been sustained in error," Mot. 1, because the statement was made on January 24, 2024, while in the MTD Order, we evaluated that statement in a paragraph that referred to statements made "throughout July, August, and September of 2024," MTD Order at 24. A review of the MTD Order makes clear that the statement was not sustained in error. The January 24, 2024 statement was upheld as actionable for the same reasons as the other statements evaluated on page 29 of the MTD Order. Rather the "error" was unintended in that the Court should have included "January" alongside "July, August, and September of 2024." Accordingly, defendants' request to reconsider the Court's ruling as to that particular statement is similarly denied.

## IV. Next Steps

The Court is left with the question of how to proceed. In the Court's view, while defendants' motion must be denied, the uncertainty surrounding the allegations sourced to the former employees in the Amended Complaint cannot be ignored, particularly considering the centrality of those allegations to the Amended Complaint and in the Court's decision to sustain it. Accordingly, at this time discovery is limited to determining whether, and to what extent, the allegations attributed in the Amended Complaint to the former employees may continue to be relied upon by

plaintiffs and if not, whether the allegations that remain are sufficient to sustain the Amended Complaint. Should the defendants, following the limited discovery permitted, seek to dismiss the Amended Complaint again, they should submit a letter seeking leave to do so in accordance with this Court's Individual Practice 2.B.

## CONCLUSION

For the foregoing reasons, defendants' motion to reconsider is denied. The Clerk of the Court is respectfully directed to terminate the motion pending at ECF No. 125.

**SO ORDERED.**

Dated: October 22, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE